FRANK H. SEARS, complainant,

*v.*

ALMA E. GROVER et al., defendant.

[Decided May 4th, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"Frank H. Sears, Sr., died June 20th, 1906, a resident of Kansas. One week prior to his death he delivered to his sister, Elizabeth H. Sears, certain personal property and took her receipt therefor. The receipt specifies the property as follows:

| | | |
|---|---|---|
| 1. Deposit in National Bank of Commerce . . . . . | | $640 |
| 2. Two checks of Elizabeth H. Sears for total of | . . . | 300 |
| 3. Check signed by Gillespie . . . . . . . . . . . . . . . . . | . . . | 75 |
| 4. Note W. O. and T. O. Laughlin . . . . . . . . . . | | 4,000 |
| 5. Life insurance policy Mutual Life Insurance Co. . . . | | 2,000 |
| | | $7,015 |

"The receipt acknowledges that all the above property is part of the estate of Frank H. Sears, Sr., and not a part of the property of Elizabeth H. Sears and states that in case of his death, said property should be turned over to his heirs according to the terms of his will. By his will Frank H. Sears, Sr., appointed Elizabeth H. Sears executrix and trustee, bequeathed a legacy of $1,000 to William C. Sears, a son, and directed that his executrix and trustee hold the residue of his estate in trust to apply the interest, income and principal to the education and maintenance of his son, Frank H. Sears, Jr., the complainant herein, until he reached the age of twenty-three, when the residue should be paid to com-

plainant. Immediately after her brother's death, Miss Sears brought the complainant, then a boy about fourteen years of age, from Kansas to her home in New York City to live with her and she provided for his education and support until 1913, when he reached the age of twenty-one years. She did not probate her brother's will and it was not probated until May 5th, 1931, sometime after complainant received it from the defendant, Chemical Bank and Trust Company (hereinafter called Chemical Bank). Elizabeth H. Sears died July 12th, 1929, without having accounted for any of the above mentioned property and in her safe deposit box were found her original receipt for the property and the will of Frank H. Sears, Sr., contained in an envelope on which she had written: 'To be delivered to Frank H. Sears, nephew, on my death.' She left a will which was admitted to probate in Morris county, on which letters testamentary were issued August 14th, 1929, to the Chemical Bank, named in her will as executor and trustee. Her original receipt, the will of Frank H. Sears, Sr., and the envelope in which they were contained came to the hands of Chemical Bank soon after the probate of her will and were delivered sometime thereafter to complainant. February 27th, 1931, the Chemical Bank filed its account as executor of the estate of Elizabeth H. Sears and gave complainant notice of settlement thereof. April 7th, 1931, complainant filed his bill in this cause against the Chemical Bank as executor and trustee, praying that an account be taken of the assets of Frank H. Sears, Sr., received by Elizabeth H. Sears and that her estate in the hands of said executor and trustee, be impressed with a trust in favor of complainant for the amount found due him on such accounting. An order was entered restraining the Chemical Bank from proceeding with said accounting and restraining it from disposing of any of the assets in its hands. Subsequently certain beneficiaries under the will of Elizabeth H. Sears were, on their motion, admitted as party defendants.

"There can be no doubt that Miss Sears received all the property mentioned in her receipt in trust to dispose of according to the provisions of her brother's will. Her receipt

and the manner in which she kept a record of the fund and of its use satisfy me on this point. The defendants dispute that the $2,000 life insurance policy belonged to the estate of Frank H. Sears, Sr., because it was made payable to Miss Sears and was paid to her after his death, but her receipt said that it was part of her brother's estate and she deposited the proceeds of the check which she received from the insurance company, with other trust funds mentioned in her receipt, in a savings account which she opened in the name of 'Elizabeth H. Sears for nephew Frank Sears.' Expense records kept by her wherein she entered money withdrawn from this bank account and expended for the maintenance of complainant, or to reimburse herself for expenditures for maintenance, also tend to convince me that the $2,000 so received by her belonged to the estate of her brother, as stated in her receipt and that she treated that money as trust funds.

"From bank books, check books and records kept by Miss Sears and found among her effects after her death, her disposition of the trust fund can be determined with fair accuracy. She collected the entire $7,015 principal of the trust fund, with $273.89 interest, or a total of $7,288.89. From the sum so received and interest which thereafter accrued thereon, she made disbursements for hospital, doctor and undertaker bills due her from her brother's estate and for the education and support of the complainant and for other purposes as hereinafter stated and I find that she was a debtor to the trust fund at her death.

"On June 30th, 1907, she took $1,666.66 from the trust fund to pay off a mortgage covering property which she owned, known as Marble Hill lots. On August 5th, 1907, she used $2,500 trust moneys to purchase a mortgage known as the Castallone mortgage and on April 4th, 1910, she withdrew $1,000 from a trust bank account for a purpose not disclosed. These three items were not used by her for any purpose of the trust and in records kept by her she showed herself indebted to complainant for these amounts and she charged herself with interest thereon. I find that at her death she was indebted to complainant in the sum of

$1,666.66, with interest from July 1st, 1913, and $1,000 with interest from October 1st, 1913. The Castallone mortgage went into the purchase of real estate and must be dealt with separately.

"Miss Sears maintained and supported complainant until he was twenty-one years of age. In her records of expenditures on his behalf, she charged herself with interest on the sums she diverted from the trust funds and credited herself with her expenditures for his account, reimbursing herself for excess expenditures by making withdrawals against trust funds in bank. Thus complainant's principal and interest appear to have been sufficient to meet all her payments on his account and such payments appear to have exhausted his estate, except as to the items of $1,666.66 and $1,000 which she had borrowed and never repaid.

"March 14th, 1911, Miss Sears purchased an apartment house property known as 681 East One Hundred and Eighty-ninth street, New York City, for $30,000, taking the title subject to a $25,000 mortgage and paying $5,000 cash. To raise this cash she placed a mortgage of $2,800 on her Marble Hill lots and from the proceeds of the mortgage she paid the seller $2,500 and assigned to him the $2,500 Castallone mortgage. Thus half the cash required for the purchase was paid out of her own funds and the other half with money she had taken from the trust funds and invested in a mortgage and so she held title to the apartment property for the joint benefit of herself and the complainant. The mortgage on this property was subsequently reduced to $17,500 and on October 30th, 1925, Miss Sears obtained an additional mortgage loan of $2,500 on the property and used that sum to pay off the $2,800 mortgage she had placed on her Marble Hill lots. She sold the apartment house August 15th, 1927, for $55,000, of which she was paid $10,000 in cash, $20,000 by the assumption of the mortgage thereon and $25,000 by a purchase-money bond and mortgage, on which quarterly installments on account of principal were to be paid, with interest. This mortgage formed part of her estate and at her death $22,375 principal was due thereon. The next cash received by Miss

Sears on the sale of this property was $9,494.19, of which complainant is entitled to one-half, with interest from August 15th, 1927. He is also entitled to allowance for one-half of the mortgage for $2,500 which Miss Sears placed on the apartment house, with interest thereon from October 30th, 1925. He is further entitled to one-half of the purchase-money mortgage which Miss Sears took back on the property, with one-half of the interest thereafter paid thereon, with interest from the dates of interest payments. On the account which Miss Sears kept of her receipts and disbursements, she charged herself with interest on the Castallone mortgage, to July 1st, 1913. Because I have found that by the use of that mortgage she made the complainant her partner in the purchase of the apartment house property, her estate should be allowed credit for said interest payments from March 14th, 1911, to July 1st, 1913, with interest thereon.

"There is no record available to show what, if any, profits were derived from the operation of the apartment house until 1922, but from that year to the year the house was sold there are work sheets in Miss Sears' handwriting in connection with her federal income tax returns, which show a total net profit of $14,408.85. There are also certain other items of operating expense shown on some of the work sheets but not included in the tax returns, which items, in fairness, I think should be deducted from the above net profits. In the work sheets for 1924 are such items for a total of $646.87 and the 1927 work sheet contains a note of $255.32 paid for commissions on rent. From the net profit of $14,408.85 the sum of $902.19 should be deducted and the complainant allowed one-half of the balance with interest from August 15th, 1927.

"The defendants urge that conversations or conferences between complainant and other parties interested in the probate of Miss Sears' will, led them to believe that the complainant had waived his rights in his father's estate, in consideration of an agreement by others not to contest the probate of Miss Sears' will. There were some negotiations between complainant and others, after complainant knew of the existence of his father's will, which tend to show that com-

plainant might have been willing to waive all claims under his father's will, if some threatened or intimated opposition to the probate his aunt's will was abandoned, but the negotiations were indefinite and required the assent of several people who never arrived at any terms and no agreement was ever made. Moreover, at the time the negotiations were in progress, the complainant was not in possession of the evidence produced at this hearing concerning the manner in which his aunt had used the funds his father had entrusted to her, or the extent of her liability to him. I see nothing in the evidence to estop him from setting up his present claim.

"By Miss Sears' will she gave complainant $5,000 and one-quarter of the residue of her estate after the termination of certain life estates. He has received his $5,000 legacy, less inheritance taxes and that sum, together with his one-quarter in remainder, is less in amount than the total of the claim which I think should be allowed him in this suit. It may have been his aunt's thought, although there is nothing in the will or evidence to disclose it, that the provisions of her will for his benefit would be sufficient to discharge her obligation to him as beneficiary under the trust fund which she had received from his father, but I cannot construe her will to have that legal effect. *Rogers* v. *Hand, 39 N. J. Eq. 270; Russell* v. *Minton, 42 N. J. Eq. 123; Deichman* v. *Arndt, 49 N. J. Eq. 106; Bennett* v. *Piatt, 85 N. J. Eq. 436.*

"The evidence produced to show the manner in which Miss Sears managed the trust fund and to prove the use she made of it and her expenditures therefrom, is complicated. In stating the items for which I find her estate liable to complainant, I believe I have given amounts and dates accurately, but I shall leave it to counsel to agree on a statement based on my conclusions, which will show the proper items and the amount of simple interest figured thereon and the total resulting therefrom and if, in preparing such statement, they disagree on any item, they may submit their dispute to me and I will settle it. For the total amount which will be found due from Miss Sears' estate (about $40,000) there will be a decree adjudging the correct and definite amount and direct-

ing that such amount be paid from her estate prior to executor's commissions and legacies. It may be that when the amount so due is fixed and is compared with the estate received by the executor, as shown by its account, some provision will be necessary in the decree touching legacies (including complainant's) and taxes paid by the Chemical Bank.

"Counsel for the complainant and defendants, in discussing in their briefs the indebtedness due from Miss Sears' estate, have referred to it as due complainant and for convenience I have also treated it in that light, but I think the indebtedness is due to the estate of Frank H. Sears, Sr., and should be paid to his administrator with the will annexed for disposition according to the terms of his will. Complainant is not the sole beneficiary under his father's will, a legacy of $1,000 being therein provided for testator's other son, William C. Sears. It seems to me that it may be necessary to amend the pleadings so as to bring in said administrator with the will annexed, or William C. Sears, as a party to this suit."

*Messrs. McCarter & English,* for the appellant.

*Messrs. King & Vogt (Mr. Harold A. Price,* of counsel), for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Fielder in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, BODINE, PERSKIE, VAN BUSKIRK, DEAR, WELLS, DILL, JJ. 8.

*For reversal*—DONGES, J. 1.

*For modification*—PARKER, LLOYD, CASE, HEHER, KAYS, HETFIELD, JJ. 6.