CALEB LORING, executor, *vs.* RICHARD K. BAKER, trustee,
& another.

Middlesex.    December 4, 1951. — May 29, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, SPALDING, WILLIAMS &
COUNIHAN, JJ.

*Restitution. Equity Jurisdiction*, Tracing of property. *Equity Pleading
and Practice*, Counterclaim.

In a suit in equity seeking repayment of a legacy to a minor child re-
ceived by the child's father and improperly mingled with funds of
certain trusts in a bank account from which a profitable investment
was purchased by the trustees, of whom the father was one, at a cost
necessitating use of a part of the legacy, where the father and his co-
trustee acted without thought of personal gain and in the belief,
mistaken through their misunderstanding of the law, that they were
acting properly, the final decree in the circumstances should give the
child a share of the investment equivalent to the proportion which
the part of the legacy used in purchasing the investment bore to the
cost of the investment, and the balance of the legacy in cash with
interest.

The fact that a final decree in a suit in equity was in accordance with an
alternative prayer for relief contained in a counterclaim by the de-
fendant did not preclude the defendant from contending on appeal
that the decree should have been in accordance with his primary
prayer.

BILL IN EQUITY, filed in the Superior Court on December
13, 1948.

The suit was heard by *Good*, J.

In this court the case was argued in December, 1951, before *Qua*, C.J., *Lummus, Ronan, Wilkins, & Spalding*, JJ., and afterwards was submitted on briefs to all the Justices.

*Richard Wait*, (*G. d'Andelot Belin, Jr.*, with him,) for the defendant Putnam.

*Talcott M. Banks, Jr.*, for the defendant Baker, trustee.

*Paul V. Power*, for the plaintiff.

WILKINS, J.   This is an appeal by the defendant Lawrence Lowell Putnam, the minor daughter of the late Augustus L. Putnam, from a decree ordering the defendant Baker, surviving trustee of certain trusts, to repay in cash (rather than partly in securities in their present form) the amount of her legacy under the will of Abbott Lawrence Lowell which was given over by the plaintiff executor to her father, and by him received and deposited in a joint account of the trusts, of which he was a trustee, under the mistaken belief that he was her lawful guardian.   This bill in equity is brought by the executor under the Lowell will to obtain repayment of the legacy.   The issue as to the manner of repayment is raised in alternative prayers of a counterclaim in the answer of the defendant legatee, Lawrence Lowell Putnam, hereinafter sometimes referred to as Laura Putnam, the name by which she is commonly known. The right to repayment in some form is not questioned.

The judge found the facts to be as agreed.   Later supplementary findings were filed by consent.   Under date of December 2, 1935, certain settlors executed a declaration of trust, the beneficiary being the defendant legatee.   Seven other declarations of trust, identical except for the beneficiary, were executed by the same settlors, three on the same date and four on December 29, 1937.   The beneficiary of each trust is a child or stepchild of Augustus L. Putnam, who, throughout September, 1943, and until his death in 1947, served with the defendant Baker as trustee.   Thereafter the defendant Baker served alone.   Each trust contained a provision authorizing the trustees to commingle

funds of all the trusts and to make joint investments and to hold undivided interests of trust properties.

In September, 1943, Augustus L. Putnam and the defendant Baker, as trustees, maintained a single account in a Boston bank. On September 15, 1943, the plaintiff delivered a check for $10,000 payable to Laura Putnam in payment of the legacy, and received a receipt signed "Augustus L. Putnam — Guardian for Laura Putnam." In fact, no guardian had been appointed. About September 16 Augustus L. Putnam indorsed the check, "Laura Putnam by Augustus L. Putnam, Trustee, Pay to Augustus L. Putnam and Richard K. Baker, Trustees u/d dated 12–2–35," and deposited it in the trustees' bank account. Prior to the deposit the amount to the credit of the account was $9,668.68. Thereafter up to October 17, 1943, income accruing to the several trusts was deposited to the account in the amount of $1,025. About October 17, 1943, Augustus L. Putnam and the defendant Baker as trustees, acting in good faith, purchased an interest in a syndicate known as the Taylor Oil Stock Purchase Syndicate, giving in payment a check for $15,000 on the trustees' bank account, of which the balance on that date was $20,693.67.

In accounts for the eight trusts prepared by Augustus L. Putnam and the defendant Baker, or by the latter alone, covering periods beginning August 31, 1941, and ending October 1, 1949, the $10,000 legacy was carried as a loan by the defendant Laura Putnam upon which interest was accrued for the benefit of her trust at the rate of four per cent annually, and the $15,000 syndicate interest was shown divided and allocated to all eight trusts in the same proportions as were other investments commonly held and administered for these trusts. All the trusts have been administered together generally as a common trust fund, securities being purchased with the funds of all and being allocated, without division of the security, among the trusts on a proportional basis whereunder each of the four 1935 trusts has double the interest of each of the 1937 trusts.

In addition, some trusts held securities not shared with the others. In October, 1943, the eight trusts owned commonly held securities totaling $55,000.

On December 1, 1948, the duly appointed guardian of Laura demanded of the defendant Baker "the maximum amount" of the interest in the oil syndicate "to which she is entitled" and the balance in cash with interest. The syndicate manager is willing to recognize Laura Putnam as the owner of any share in the syndicate interest as may be determined by the court.

The final decree ordered the defendant Baker as trustee to pay to the plaintiff executor the sum of $10,000 together with interest from September 15, 1943.

The case at bar is not precisely like any we have found or have had brought to our attention. Here there is no conscious wrongdoer, in dealing with whom it is the policy of the law to be severe. The conscious wrongdoer cannot make a profit and is responsible for losses. *Bowen* v. *Richardson*, 133 Mass. 293, 296. At the option of the rightful owner, a constructive trust or an equitable lien may be enforced against property acquired in exchange for property wrongfully disposed of by the conscious wrongdoer. Restatement: Restitution, § 202. Scott on Trusts, §§ 508, 517.2. See *Locke* v. *Old Colony Trust Co.* 289 Mass. 245, 253; *Sullivan* v. *Sullivan,* 321 Mass. 156, 158. Where a conscious wrongdoer commingles money of others but not of his own, each owner is entitled to share in the mingled fund or in property acquired with the fund in such proportion as his money bore to the whole amount of the fund. Restatement: Trusts, § 202, comment n. Restatement: Restitution, § 213. On such facts, the claimants are to share the profits and bear the losses equally. Scott on Trusts, § 519.

We likewise are not concerned with an innocent converter. The rules of law are more lenient with him. When one who is without knowledge of the facts which make him a converter wrongfully disposes of another's property and acquires other property in exchange, the owner may enforce

an equitable lien but not a constructive trust. Restatement: Restitution, § 203. He is, of course, liable for the value of the property converted if its return has not been accepted. *Jackson* v. *Innes,* 231 Mass. 558, 560. *Lawyers Mortgage Investment Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 361. *Manhattan Clothing Co. Inc.* v. *Goldberg,* 322 Mass. 472, 475–476. See Restatement: Torts, § 247; Prosser on Torts, § 15 (pages 110–111). Of the innocent converter, it has been said that if he exchanges the property for other property and makes a profit, "there is no reason of policy or of justice to require him to account for the profit thus innocently made." Scott on Trusts, §§ 509 (pages 2446–2447), 463, 516.

The present case lies between that of the conscious wrongdoer and that of the innocent converter. Some issues here presented resemble the subjects of the caveats to Restatement: Restitution, §§ 202–204, where it is pointed out that no opinion is expressed on the questions whether a constructive trust may be enforced (1) against a person who disposes of property of another and acquires in exchange other property with notice but without knowledge that the disposition is wrongful; and (2) against a converter who has disposed of the property converted and acquired in exchange other property without knowledge but with notice of the facts which make him a converter.

The trustee Putnam knew that he held no court appointment as guardian of Laura, but believed that none was needed to enlarge his authority as her father. He placed her legacy in the common trust bank account, thinking that he had that right and not suspecting that it was in any way improper for him to indorse the check or for the trustees to receive it. Apart from guardianship failure, the legacy, to which Laura would be entitled upon coming of age, was not properly placed in a trust which might not terminate until twenty-one years after the death of the last survivor of the original trustees and of herself. The trustees "in good faith" purchased the syndicate interest, expending $15,000 out of a common trust bank balance of

$20,693.67. In the trust accounts the transaction was shown as a loan by the trust of Laura upon which interest was accrued at four per cent, and the syndicate interest was allocated among the several trusts, including her own, by a method which would have been effectual had the use of her money been authorized. *French* v. *Hall*, 198 Mass. 147. *Springfield Safe Deposit & Trust Co.* v. *First Unitarian Society*, 293 Mass. 480, 488. Scott on Trusts, § 170.16. At this stage the trustees, even if they had been intentional wrongdoers, might have undone the results of their action if, before objection, they had paid off Laura's loan with funds of the trust. Restatement: Restitution, § 213 (2). Scott on Trusts, § 519.2.

The trustees were not conscious wrongdoers, because they acted without thought of personal gain and in the belief that they were investing properly. Their position differs from that of the innocent converter in that the trustee Putnam knew he had not been appointed guardian, and in that both he and the defendant Baker knew that they were trustees and were aware of the source of the funds used to make the investment. In short, it was not the facts, but the law, which they did not understand.

The investment has apparently been profitable. So the main question is how the profit should be divided. For reasons we have outlined, the decree of the court below cannot be upheld upon the analogy of the innocent converter. And there is nothing in *Berry* v. *Kyes*, 304 Mass. 56, 59, which is controlling. That case did not deal with a profit of any kind, much less a profit from mingled funds, and does not purport to make any statement relating to such a question. Because the trustees did not know that they had no right to use Laura's money, it seems reasonable not to impose upon the trust beneficiaries, of whom Laura is one, the consequences of a use of more than was necessary of her money. If the trust fund had been at least $15,000, and no other money had been needed to purchase the syndicate interest, we doubt whether in these circumstances it should be held that Laura acquired any interest in it. On

the facts of the present case, because of the good faith of the trustees, we think it equitable to treat their action in the way which would call for a minimum of restitution. Hence, we cannot adopt the legatee's argument that her share should be the proportion which $10,000 bears to $20,693.67. We believe that her share in the profit should not exceed the extent to which it was necessary to use her legacy. Apart from her $10,000, the fund contained $10,693.67. Hence, in order to purchase a security costing $15,000, it was necessary to use but $4,306.33 of her funds. Her share in the syndicate interest, accordingly, should be the proportion which $4,306.33 bears to $15,000. She is also entitled to the repayment of the balance of her $10,000, to wit $5,693.67 with interest from September 15, 1943.

It is contended that there is no ground for cutting down Laura's claim to this figure. The question, however, is not one of cutting down, but of ascertaining what profit she ought to have in an investment of less than the whole fund. The phrase pro rata settles nothing by itself. After all, the trustees were undertaking in good faith to act as trustees and to invest a part of a trust fund into which the legacy had been improperly paid. While Laura's guardian might elect to affirm the trustees' act and to keep a share in the syndicate interest, he could not retroactively elect her proportion. That must be decided upon what is equitable. And it should be well noted that there is no attempt to follow the rest of the legacy into the fund. To that extent the counterclaim rests upon another theory.

This result nevertheless is not open to any objection of partial election. The legatee is entitled to follow her funds to the extent that it was necessary to use them. No authority has been cited for the argument that because she seeks to trace part of her legacy into the syndicate interest she must also seek to trace the balance into other trust investments, if any, made with her money, circumstances not factually supported by the record.

Nor is there validity to the argument that she is bound by the decree of the court because somewhere in her counter-

claim there is an alternative prayer for the payment of $10,000 with interest. Her first prayer is for a fraction of the syndicate interest and for the balance in cash. These prayers are mutually exclusive. *Boyd* v. *New York & Harlem Railroad,* 220 Fed. 174, 179–180 (D. C. S. D. N. Y.). Their proper interpretation is that the relief asked in the first prayer is sought if it can properly be granted, otherwise the alternative relief is prayed for. *Hardin* v. *Boyd,* 113 U. S. 756, 763. This is a case where the right to relief is determined by the allegations of the counterclaim. See *Bleck* v. *East Boston Co.* 302 Mass. 127, 130.

This is an opinion of the majority of the court.

The final decree is reversed, and a new decree is to be entered by the Superior Court in conformity with this opinion.

*So ordered.*