BREYER, Circuit Judge.
 

 This court first considered this case three years ago.
 
 See Berman v. Provencher,
 
 614 F.2d 823 (1st Cir.1980)
 
 (Provencher I).
 
 In an opinion that criticized the bankruptcy court’s decision, the state of the record, and the parties’ briefs, we wrote that the bankrupt Provenchers had improperly failed to disclose to the trustee Berman one of their important assets — namely, an equitable interest in a corporation called Ramblewood Associates, Inc. (Ramblewood). Ramble-wood apparently served as a Provencher alter ego. The Provenchers had deposited in a Ramblewood bank account money that rightfully belonged to the bankruptcy estate and had used that money to help buy land and build a house for themselves. The trustee, not the Provenchers, was entitled to that money.
 

 In our earlier opinion, we decided three points of law. First, we held that the trustee’s action to recover the improperly withheld funds was not barred by the statute of limitations. We noted that in December 1972 the Provenchers gave the trustee an income tax return listing earned income from Ramblewood and that the trustee did not bring this suit until January 1975. Nevertheless, we wrote that given the Pro-venchers’ misstatements and concealment, the two-year statute of limitations in § 11(e) of the former Bankruptcy Act, 11 U.S.C. § 29(e) (1976),
 
 superseded by
 
 Bankruptcy Code, Pub.L. No. 95-598, 92 Stat. 2549 (1978), did not bar the action. Second, we rejected the trustee’s claim to the entire property. We noted that in buying the land and building the house, estate funds had been commingled with the Provenchers’ own funds; we held that the trustee was therefore entitled to some but not all of the real property. Third, we gave explicit directions about how to proceed on remand. We stated that the trustee could either assert a lien against the house for the amount of the estate money invested in it or “to the extent that [the trustee] can follow the [estate] funds into the real estate, ... he may claim the proportionate share of the real estate attributable thereto.”
 
 Provencher I,
 
 614 F.2d at 825.
 

 On remand, despite these explicit holdings, the parties again became embroiled in complex arguments. For one thing, the parties strongly contested whether each of the many items of value
 
 (e.g.,
 
 checks, cash, labor provided in kind) that went into the creation of the house properly belonged to the estate or were earned by (or given to) the Provenchers after the filing of the bankruptcy petition. The bankruptcy judge eventually decided that 47.9 percent of the property investment (not attributable to the mortgages on the property) had been contributed by the trustee. For another thing, the trustee asked the bankruptcy judge to convey his interest
 
 (i.e.,
 
 47.9 percent) to him directly in the form of an undivided interest in the property. Instead, the bankruptcy judge valued the house at $70,000 and gave the trustee a
 
 money judgment
 
 equal to approximately 47.9 percent of this amount less the face value of the outstanding mortgage. In doing só, the bankruptcy court appears in effect to have partitioned the property and to have used, only the Provenchers’ testimony to determine its value. (The trustee presented no appraisal evidence.) Finally, the parties
 
 *570
 
 contested several more minor matters, such as whether the Provenchers owed the trustee rent and whether the trustee should be assessed for a fraction of the Provenchers’ mortgage payments.
 

 The district court affirmed the judgment of the bankruptcy court, and both parties appeal from that judgment. The trustee challenges the bankruptcy court’s decision on nearly every point. The Provenchers seek to reargue their statute of limitations claim. And, many of the points raised are better suited for decision by an accountant than a judge. Nonetheless, to expedite this litigation, we shall decide as many of the issues as possible.
 

 1. We deal first with the most important point of law: the trustee says that he was entitled to an undivided interest in the real property rather than a money judgment reflecting the value of the property. The trustee is correct. This court in
 
 Provencher I
 
 explicitly stated that the trustee, if he chose, could “claim the proportionate share of the real estate.”
 
 See Provencher I,
 
 614 F.2d at 825. We did not say he could claim only a proportionate share of the “value" of the real estate. This statement is the “law of the case.”
 
 Cf. Cochran v. M & M Transportation Co.,
 
 110 F.2d 519, 521-22 (1st Cir.1940); IB
 
 Moore’s Federal Practice
 
 ¶ 0.404 (1965). Moreover, in our previous opinion we followed the analysis of Professor Scott, which we explicitly cited.
 
 See
 
 5 A. Scott,
 
 The Law of Trusts
 
 (3d ed. 1967). We described the trustee’s rights as Professor Scott and the
 
 Restatement
 
 describe the rights of an innocent party against a “conscious wrongdoer” who uses commingled funds to buy property,
 
 see Restatement of Restitution
 
 § 202 (1937); 5 A. Scott,
 
 supra,
 
 at § 508. In such a situation, the innocent party can choose either to enforce a lien on the property for the value of the estate’s funds or to enforce a constructive trust on the property. This is a virtually universal rule as described in 5 A. Scott,
 
 supra,
 
 at § 516, and the
 
 Restatement of Restitution
 
 § 210. It is supported by prominent authorities.
 
 See, e.g., Primeau v. Granfield,
 
 184 F. 480 (S.D.N.Y.) (L. Hand, J.),
 
 rev’d on other grounds,
 
 193 F. 911 (2d Cir.1911),
 
 cert. denied,
 
 225 U.S. 708, 32 S.Ct. 889, 56 L.Ed. 1267 (1912); Ames,
 
 Following Misappropriated Property into its Product,
 
 19 Harv.L.Rev. 511, 511-12 (1906);
 
 see also, e.g., Sears v. Grover,
 
 116 N.J.Eq. 111, 172 A. 525, 527 (1934);
 
 G & M Motor Co. v. Thompson,
 
 567 P.2d 80, 83-84 (Okl.1977);
 
 Mace v. Young,
 
 231 S.W.2d 722, 726 (Tex.Civ.App.1950),
 
 writ of error dismissed or refused.
 
 Given the compelling criticism of the only Massachusetts authority we have found to the contrary,
 
 Bresnihan v. Sheehan,
 
 125 Mass. 11, 13 (1878), and the failure of the Massachusetts courts to cite
 
 Bresnihan
 
 since 1947, we believe, even were it not the “law of the case”, that this universal rule applies in Massachusetts as well.
 
 See Mason v. American Emery Wheel Works,
 
 241 F.2d 906, 909 (1st Cir.) (“A decision may become so overloaded with illogical exceptions that by erosion of time it may lose its persuasive or binding force even in the inferior courts of the same jurisdiction.”),
 
 cert. denied,
 
 355 U.S. 815, 78 S.Ct. 17, 2 L.Ed.2d 32 (1957).
 

 Further, Professor Scott explains precisely how courts treat property held subject to a constructive trust. The holders of the property, here the Provenchers, have “an equitable duty
 
 to convey it”
 
 to the beneficiary, here the trustee. 5 A. Scott,
 
 supra,
 
 at § 462 (emphasis added);
 
 see Loring v. Baker,
 
 329 Mass. 63, 66-67, 106 N.E.2d 434 (1952);
 
 Berry
 
 v.
 
 Kyes,
 
 304 Mass. 56, 59, 22 N.E.2d 622 (1939);
 
 Restatement of Restitution
 
 § 160; 1 G. Palmer,
 
 The Law of Restitution
 
 § 1.3 (1978). The trustee as beneficiary is entitled to an
 
 undivided share of the property
 
 equivalent to the proportion which his funds bore to the total amount (other than mortgage loans) used by the Provenchers to buy the house.
 
 See Restatement of Restitution
 
 § 210; 5 A. Scott,
 
 supra,
 
 at § 516. The trustee would be entitled to the entire property only if the Provenchers had used solely estate funds (or estate funds plus borrowed funds) to buy the property — not the case here.
 
 See Restatement of Restitution
 
 § 210 comment f; 5 A. Scott,
 
 supra,
 
 at § 516.2. Where, as in
 
 *571
 
 this case, the holder used commingled funds to buy the property subject to a mortgage, according to the authorities we cited the beneficiary of the constructive trust (here the trustee in bankruptcy) may take title to a proportionate share of the entire property, subject to the mortgage.
 
 See Sears v. Grover, supra;
 
 5 A. Scott,
 
 supra,
 
 at § 516.2.
 

 On remand, however, the bankruptcy court not only determined the parties’ relative interests in the property, it went on to award a money judgment to the trustee against his will. In doing so the court acted contrary to the authority just cited. And, if it was doing so by virtue of some inherent power to partition real property among owners of undivided interests, we believe it erred. For one thing, the parties had not formally petitioned for a partition of the property. For another thing, this case arose under the Bankruptcy Act of 1898 which, unlike the present Bankruptcy Code of 1978, contains no provision for partition or a partition-like remedy.
 
 CL
 
 Bankruptcy Code § 363, 11 U.S.C.A. § 363 (1979). To the contrary, considerable authority suggests that bankruptcy courts lacked this power under the old Act. Some courts held that partition was not within the administrative functions of the bankruptcy court.
 
 See First National Bank of Chicago
 
 v.
 
 Chicago Title & Trust Co.,
 
 198 U.S. 280, 25 S.Ct. 693, 49 L.Ed. 1051 (1905) (contest over title to property not administrative matter);
 
 Bardes v. Hawarden Bank,
 
 178 U.S. 524, 532, 20 S.Ct. 1000, 1003, 44 L.Ed. 1175 (1900) (same);
 
 In re Victor,
 
 218 F.Supp. 218, 220 (S.D.Ill.1963) (trustee with undivided inter est in property may “have a partition of the real estate by a proceeding in an appropriate state court” if division is necessary to obtain fair value for his interest);
 
 Harlin v. American Trust Co.,
 
 67 Ind.App. 213, 119 N.E. 20, 23 (1918) (partition is a “controversy arising out of the settlement of the estate” rather than a “proceeding in bankruptcy" and therefore state courts rather than bankruptcy courts have jurisdiction). Other courts suggested that a bankruptcy court in a case like the one at bar would not have the requisite possession of the property.
 
 See In re American Southern Publishing Co.,
 
 426 F.2d 160 (5th Cir.) (property not in constructive possession of bankruptcy court even though held by bankrupt’s agent, where bank had veto power over disposition of the property),
 
 cert. denied,
 
 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970);
 
 In re Victor, supra
 
 (suggesting that partition action be brought in state court where trustee obtained undivided interest in house through bankrupt husband, and husband and nonbankrupt wife owned the property in joint tenancy — despite exclusive summary jurisdiction of the bankruptcy court if property were in the possession of the court);
 
 Harlin v. American Trust Co., supra
 
 (partition allowed in state court where trustee obtained undivided interest in house through bankrupt husband, and husband and nonbankrupt wife owned the property as tenants in common). And, we doubt that the trustee here has consented to jurisdiction to partition.
 
 Cf.
 
 2
 
 Collier on Bankruptcy
 
 § 23.08[1] n. 7 (14th ed. 1974) (consent is not jurisdictional basis under § 2 of the Bankruptcy Act “as to a claim asserted by strangers to the proceedingsi over a matter in no way connected with, the administration or distribution of the bankrupt estate.”) Nor have we found any other authority suggesting that the 1898 Bankruptcy Act empowers a bankruptcy court exercising summary jurisdiction (as it is here),
 
 see
 
 Bankruptcy Act § 2, 11 U.S.C. § 11, to partition this property.
 

 Furthermore, we see no reason to make new law by allowing partition in this case. Massachusetts has a perfectly adequate procedure for partition.
 
 See
 
 Mass.Gen.Laws Ann. ch. 241, §§ 1-37. Indeed, that procedure will protect the parties’ rights far more completely than the procedure the bankruptcy court followed here. As the former Bankruptcy Act is rapidly becoming obsolete, as this issue was not briefed by the parties, and as our previous opinion stands as the law of this case, we see no need to explore this subject further. We hold that the bankruptcy court should require the Provenchers to provide the trustee with an undivided interest in the property. The trustee is, in effect, the Pro-
 
 *572
 
 venchers’ landlord as to that interest. If such an arrangement proves impractical, the parties are free to seek partition in the state courts.
 

 2. We next consider the trustee’s attacks on the bankruptcy court’s determination of the relative size of the parties’ interests in the property. The court found that the Provenchers’ property was the result of an investment (other than borrowed funds) of $23,163.62. Of this amount, $11,-106.22, or 47.9 percent, came from Ramble-wood and belonged to the trustee. The remainder, $12,057.40, belonged to the Provenchers since it derived from their post-petition resources. The court found that this latter sum consisted of $2,300 worth of Mr. Provencher’s labor, $2,907.40 of Mr. Provencher’s brothers’ labor, $2,250 worth of equipment provided by Interstate Plumbing, $300 worth of materials provided by Pioneer Valley Electrical, and $4,300 provided by the Provenchers’ children. The trustee challenges the court’s conclusions that these sums (other than the Pioneer Valley, contribution) represented investments by the Provenchers.
 

 First, the trustee argues that the court should not have counted the Provencher childrens’ money ($4,300) as an investment of the parents in determining the parents’ share of the property. The court found that this money initially belonged to the children, not the Provenchers or the estate. This finding is adequately supported, in part by testimony that the money was collected by the children over many years from birthday and other gifts. The trustee argues that the children loaned the money to their parents and that it should be treated as if it were a mortgage loan,
 
 i.e.,
 
 treated as if it belonged to neither party. The law treats the mortgage loan as belonging to neither party,
 
 see
 
 pp. 570-71
 
 supra,
 
 however, presumably in part because of the close relation of the loan to the property— property which belongs to both parties. We find nothing in
 
 Scott
 
 or the
 
 Restatement,
 
 nor does the trustee cite any authority, to suggest that a totally independent loan not secured by the property should be treated as if it were a mortgage loan. As long as the money did not belong to the estate, we are unable to find any reason why we should treat this money differently according to whether the Provenchers earned it, were given it, or independently borrowed it.
 

 Second, the trustee attacks Interstate Plumbing’s gift to the Provenchers of heating, plumbing and air conditioning equipment valued at $2,250. He bases his attack on the admission by Mr. Provencher that although this equipment was “more or less a gift,” “a little part of it ... was a commission.” However, the bankruptcy judge cited other testimony tending to show that Interstate was likely to have “given” this equipment to a contractor like Mr. Pro-vencher in hope of future favors, and we have no evidence that the “little part” to which Mr. Provencher referred as a “commission” was more than
 
 de minimis.
 
 The bankruptcy court’s disposition of the issue is not clearly erroneous.
 
 See In re Gross,
 
 302 F.2d 338, 339 (8th Cir.1962) (“clearly erroneous” standard applies to findings of bankruptcy court); 9 C. Wright & A. Miller,
 
 Federal Practice and Procedure
 
 § 2573 (1971) (same).
 

 Third, the trustee argues that the labor provided by Mr. Provencher was in fact compensated, either by Ramblewood funds not invested in the house or by mortgage money not invested in the house. The bankruptcy court, however, rejected this same argument and found that Mr. Pro-vencher’s labor was uncompensated and thus an investment in kind in the property. We cannot say, from the record, that this finding is clearly erroneous.
 

 The trustee makes several other, similar claims. He argues that the court was wrong to value the brothers’ uncompensated labor at $2,904; that this labor was “loaned” to the estate, not “given” to Pro-vencher; that more mortgage funds were invested in the property than the court determined; that a $500 check from Interstate Plumbing belonged to the estate and was not an “advance” against future Pro-vencher services; and that various other calculations by the court were wrong.
 
 *573
 
 Once again, he demands the entire property.
 
 Cf. Provencher I,
 
 614 F.2d at 825. We have reviewed the record with the trustee’s arguments in mind. All of these claims boil down to attacks on findings of fact as “clearly erroneous,” and in no instance do we agree with the trustee that any such clear error exists. Instead, we believe the record adequately supports the bankruptcy court’s findings on these points.
 

 3. We next turn to several adjustments that must be made because of our holding that the trustee is entitled to an undivided 47.9 percent interest in the property. First, the trustee is, as to this share, effectively the Provenchers’ landlord. Thus, unless the bankruptcy court finds on remand that the trustee waived the argument, the Provenchers must pay the trustee a reasonable rent. This rent will equal the fair rental value of the property during the years in question multiplied by .479.
 
 See Hossier State Bank of Indiana v. Gediga,
 
 431 F.2d 751, 753-54 (7th Cir.1970);
 
 Restatement of Restitution
 
 § 159 comment a, illustration 1. Second, the trustee must pay the Provenchers 47.9 percent of the property taxes they have paid during the years in question.
 
 See Restatement of Restitution
 
 §§ 158 comment b, 177 comment c; 5 A. Scott,
 
 supra,
 
 at § 479.1.
 
 See generally Shell Oil Co. v. McKnight,
 
 204 F.Supp. 159, 164 (E.D.Tex.1961),
 
 aff’d,
 
 302 F.2d 731 (5th Cir.1962) (per
 
 curiam), cert. denied,
 
 372 U.S. 968, 83 S.Ct. 1093, 10 L.Ed.2d 131 (1963);
 
 Cann
 
 v.
 
 Barry,
 
 293 Mass. 313, 317-18, 199 N.E. 905 (1936). The trustee must also pay a fair share of the mortgage payments (principal plus interest) that the Provenchers have made.
 
 See Restatement of Restitution
 
 §§ 158 comment b, 177 comment c. To determine the fair share, the bankruptcy court will have to determine first what proportion of the borrowed money was used for the property (for the trustee need not contribute to the repayment of funds that the Provenchers did not invest in the property). If, for example, the Provenchers had borrowed $25,000 and used $20,000 for the property, the court should divide four-fifths of each mortgage payment between the Provenchers and the trustee. In such a case, the trustee would pay 47.9 percent of four-fifths of each mortgage payment. We leave it to the bankruptcy court to work out the details in its discretion.
 

 4. The Provenchers again argue their statute of limitations claim before this court. We rejected that argument the last time this case was before us on appeal, and that rejection stands as the “law of the case.” The whole point of the “law of the case” doctrine is to prevent the sort of endless relitigation that is now before us.
 

 We find no equities running in the Pro-venchers’ favor. They were fully aware of the importance of Ramblewood as an asset, yet they deliberately concealed its existence from the trustee and treated its funds as their own. As against these facts the Pro-venchers point to the fact that they listed some earned income from Ramblewood on a tax return that they sent to the trustee in December 1972, two years and one month before he filed suit. This latter fact is hardly enough to put the trustee on immediate notice. It certainly is not sufficient to invoke laches as against the trustee,
 
 see In re Thomas,
 
 204 F.2d 788, 794-95 (7th Cir.1953) — an issue left open in
 
 Provencher I,
 
 614 F.2d at 825 n. * — and it provides no reason from departing from the “law of the case” on the statute of limitations issue.
 

 Vacated and remanded.