USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1854 CREDIT FRANCAIS INTERNATIONAL, S.A., Plaintiff, Appellee, v. BIO-VITA, LTD., HEMO-INNOVATIONS, LTD., Defendants, Appellants.  ____________________ No. 95-1091 BIO VITA, LTD., ET AL., Plaintiffs, Appellees, v. CARL W. RAUSCH, ET AL., Defendants, Appellants,  ________ IDEAL ENVIRONMENTAL SYSTEMS, INC., Counterclaimant, Appellant.  ____________________ No. 95-1092 BIO VITA, LTD., ET AL., Plaintiffs, Appellees, v. CARL W. RAUSCH, ET AL., Defendants, Appellees,  ________ PETER FISHER & BALFOUR HOLDINGS, INC., Counterclaimants, Appellants.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. James L. Watson,* Senior Judge] ____________  ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ David M. Mermell on Opposition to Motion to Vacate Order __________________ Dismissing Appeal for appellants, Bio-Vita, Ltd. and Hemo-Innovations, Ltd. S. Elaine McChesney, with whom Robert A. Buhlman and Bingham, ____________________ __________________ ________ Dana & Gould were on brief for appellees Biopure Corporation, Biopure _____________ Associates Limited Partnership and Carl W. Rausch. James B. Hicks, with whom Kathy A. Jorrie, Andrews & Kurth _______________ _________________ _________________ L.L.P., Evan Slavitt and Hinckley, Allen & Snyder were on brief for ______ ____________ _________________________ appellants, Peter Fisher, Balfour Holdings, Inc. and Ideal Environmental Systems, Inc. Marc S. Palay, with whom Eric W. Bloom, Winston & Strawn, Jerome _____________ _____________ _________________ ______ M. Leonard, John D. Donovan, Jr. and Ropes & Gray were on brief for __________ _____________________ _____________ appellee, Credit Francais International, S.A.  ____________________ February 29, 1996  ____________________  ____________________ *Of the United States Court of International Trade, sitting by designation. 2 CYR, Circuit Judge. In this consolidated, multiparty CYR, Circuit Judge ______________ proceeding, the district court entered two separate summary judgment orders for intervenor CFI.1 The first judgment was against Trainor and awarded CFI a constructive trust over Trai- nor's "choses in action" against Biopure. The second judgment awarded CFI similar relief against Fisher. The second judgment was also favorable to Biopure. Each judgment was certified, though at different times, as final and immediately appealable under Fed. R. Civ. P. 54(b).  The two judgments spawned appeals by three parties. Trainor appealed from the first judgment, but then voluntarily dismissed the appeal. Fisher noticed an appeal from the second judgment, along with a purported "cross-appeal" from the first judgment, as did Ideal. Fisher and Ideal also moved to vacate the voluntary dismissal of the Trainor appeal.  Based on a thorough record review, we conclude that:  ____________________ 1The various parties are referred to as follows:  "Fisher" collectively designates Peter Fisher and Balfour Holdings, Inc. ("Balfour"), an entity con- trolled by Fisher.  "Ideal" designates Ideal Environmental Systems, Inc.  "Trainor" collectively designates William Trainor, his daughter Diane Trainor, and Trainor-controlled compa- nies, Bio-Vita, Ltd. ("Bio-Vita"), Hemo-Innovations, Ltd. and Laurel Mountain Trust ("LMT").  "Biopure" collectively designates Biopure Corporation and Biopure Associates Limited Partnership ("BALP"), as well as Carl W. Rausch.  "CFI" designates Credit Francais International, S.A.  3 (1) the Ideal appeal was filed late and, in all events, Ideal lacks standing to appeal; (2) the Trainor appeal was properly dismissed; (3) the Fisher "cross-appeal" brief challenging the first judgment should be stricken; and (4) the court lacks appellate jurisdiction over Fisher's challenge to the second judgment.  At the outset, we note that our consideration of these appeals has been severely hampered by the failure of Fisher and Ideal to conform their briefs and appendices as required by the applicable rules. Their briefs do not include necessary juris- dictional information, a meaningful description of the district court proceedings, nor comprehensible record references. See ___ Fed. R. App. P. 28(a)(2)(ii), (a)(4), (e). The first three volumes of their appendices, approximating 2500 pages, are poorly indexed, not in chronological order, and not consecutively paginated. See Fed. R. App. P. 30(d). Prior to oral argument, ___ despite a careful search of the appendices and the eight volumes of record originally designated on appeal, we were unable to locate crucial pleadings and exhibits, including documents referenced in appellants' own briefs.  At oral argument, these matters were brought to appel- lants' attention and we invited an appropriate motion. Appel- lants later sought and were granted leave to file a two-volume supplemental appendix consisting of an additional 1400 pages. The supplement contains many but not all of the missing documents. It also contains, however, unindexed documents of 4 uncertain relevance, some of which may not have been before the district court. Moreover, appellants did not seek leave to repaginate and rearrange the first three volumes of their appen- dices, obliquely explaining instead that these volumes "have been used by the Court and parties for over three months." And they failed to revise their record references to the documents cited in their briefs. See Fed. R. App. P. 30(c). ___ It is appellants' responsibility to provide the court with intelligible briefs and appendices sufficient to support their points on appeal, United States v. One Motor Yacht Named ______________ ______________________ Mercury, 527 F.2d 1112, 1113 (1st Cir. 1975), failing which "the _______ court in its discretion . . . may scrutinize the merits of the case insofar as the record permits, or may dismiss the appeal if the absence of a [record] thwarts intelligent review." Moore v. _____ Murphy, 47 F.3d 8, 10 (1st Cir. 1995). Accordingly, in the ______ instant case, wherever material uncertainties result from an incomplete or indecipherable record and impede or affect our decision, we resolve such uncertainties against appellants. See ___ Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987) ("It is the ____ _____ appellant who must bear the brunt of an insufficient record on appeal."). With this caveat, we recount the background facts as best we can. I I BACKGROUND BACKGROUND __________ Although significant differences distinguish the parties' versions of the relevant facts, we recite the skeletal 5 scenario upon which the parties predicate their claims.  Trainor, the central figure in the dispute, allegedly defrauded all the other parties. Fisher entered into a joint venture with Trainor to invest in, and develop, Biopure's hemo- globin-based products. Each partner was to contribute 50% of the capital needed to finance their undertaking. Trainor was respon- sible for negotiating a contract with Biopure. Fisher was to arrange for human testing of a Biopure product Hemopure in Guatemala. Earlier, acting through Ideal as the nominal borrower, Trainor had obtained more than $14 million from CFI in a fraudu- lent loan transaction. Although Fisher likewise was involved in the CFI loan transaction, his knowledge of the fraud perpetrated by Trainor remains in dispute. Trainor used approximately $3 million in "tainted" CFI loan proceeds to finance the Biopure contract. These monies have been traced directly from Trainor's bank account to the Biopure deal. The "ownership" of this $3 million at the time it was invested in Biopure is a contested matter as between Fisher and Ideal.  Allegedly at about the same time, Trainor secretly forced Fisher out of the Biopure deal by substituting Bio-Vita, Trainor's own company, as the named party to the contract with Biopure. The contract entitled Trainor to an equity interest in Biopure and licensing rights to the Biopure products. Biopure subsequently rescinded the contract and awarded similar equity and licensing rights to Upjohn. According to Fisher, by then the 6 rights licensed to Upjohn were worth at least $179 million.  7 The District Court Proceedings The District Court Proceedings ______________________________ Fisher sued Trainor, and later Biopure, for $250 million or a 50% share in the Biopure rights ("Fisher v. Trai- ______ _____ nor"). Trainor then sued Biopure. Biopure counterclaimed ___ against Trainor for fraud, adding Fisher as a third party defen- dant in the Trainor lawsuit ("Trainor v. Biopure"). Fisher's _______ _______ third party answer included a counterclaim against Trainor seeking to impose a constructive trust upon any Trainor recover- ies from Biopure.  The first count in the Fisher v. Trainor complaint was ______ _______ tried to a jury in November, 1992, resulting in a special verdict that Trainor had breached a binding oral contract with Fisher whereby the two were to have shared equally in the Biopure deal. A mistrial was declared later, however, because Trainor and Fisher were unable to agree on the meaning of the special verdict and how to proceed with respect to the separate action in Trainor _______ v. Biopure. We denied Fisher's ensuing petition for a writ of _______ mandamus. In re Peter Fisher & Balfour Holdings, Inc., 7 F.3d _____________________________________________ 218 (Table), No. 93-1914 (1st Cir. Oct. 12, 1993), cert. denied, ____ ______ 114 S. Ct. 1299 (1994).  CFI then intervened in the Trainor v. Biopure action, _______ _______ claiming a constructive trust over the Trainor and Fisher rights against Biopure. CFI also demanded judgment on certain direct claims against Biopure.  The district court first entered summary judgment for CFI and against Trainor, imposing a constructive trust upon 8 Trainor's claims against Biopure based on findings that: (1) Trainor's fraud against CFI was undisputed,2 (2) CFI had traced approximately $3 million of its loan funds through Trainor to the Biopure investment, and (3) all monies advanced by Trainor in furtherance of the Biopure deal were traceable to CFI.  Fisher did not oppose CFI's motion for summary judgment against Trainor, but ambiguously purported to reserve a right to demand a share of Trainor's rights in the Biopure transaction. The district court accordingly ruled, [T]he court notes the existence of another claim to rights arising from the transaction with Biopure . . . Fisher claims to have had a joint venture agreement with Trainor to share in the outcome of the transaction with Biopure . . . [T]his opinion does not address his claims and their effect, if any, on CFI's constructive trust. June 28, 1994 Order at 6. The district court certified the CFI summary judgment against Trainor as final under Rule 54(b), and judgment entered on July 1, 1994.  Trainor filed a premature notice of appeal shortly after Fisher moved to amend the judgment pursuant to Fed. R. Civ. P. 59(e), notwithstanding Fisher's earlier decision not to interpose objection to the CFI motion for summary judgment. Contemporaneously, Fisher filed a "first amended counterclaim" which purported to add Ideal as a party to the pending litigation  ____________________ 2This finding was predicated in substantial part on an earlier Ohio consent judgment for fraud against Trainor. In the _______ same Ohio action, a default judgment was entered against Ideal and remains outstanding, according to CFI, because Ideal is defunct. 9 for the first time. Ideal also purported to join as a party in the Rule 59(e) motion to amend the earlier Trainor judgment.3 In response to a motion to strike the amended counterclaim, Fisher and Ideal formally moved for leave to amend it by, inter _____ alia, "adding Ideal as a party plaintiff." Finally, CFI and ____ Biopure moved for summary judgment against Fisher. On November 22, 1994, the district court issued a memorandum opinion denying the Rule 59(e) motion to amend, striking as untimely the first amended counterclaim which had attempted to insinuate Ideal as a party to the case, and granting the Biopure and CFI motions for summary judgment against Fisher. Based on its conclusion that the only claims Fisher had asserted against Biopure were those Fisher and Trainor jointly held against Biopure, the district court ruled: "there is no ground whatsoever in law or equity that gives Fisher a right to share in the benefits of his co-venturer's fraud to the detriment of a prior innocent party."  The district court's memorandum order provides the following explanation for its decision to enter a second Rule 54(b) certification, covering the summary judgments against Fisher:   ____________________ 3The docket sheets list two Rule 59(e) motions filed on the same day, one by Ideal and one by Fisher, but we can locate only one such motion in the appendix and record. It purports to have been "submitted" by both Fisher and Ideal, although it is titled "Ideal's Motion to Alter or Amend Judgment." Fisher complains that the district court never ruled on his motion. Given the record before us, however, we conclude that there was a single, joint motion, which was denied by the court. See accompanying ___ text. 10 In the opinion of the court the granting of these motions for summary judgment is likely to lead to the simplification of the case and the elimination of a future trial. For this reason the court finds it advisable to make these judgments final under Rule 54(b). The court finds no just reason to delay final judgment on these matters. Nov. 22, 1994 Order at 13. On December 6, 1994, a "separate document," incorporat- ing the second Rule 54(b) judgment, was entered on the district court docket:  In accordance with this Court's Memorandum, Opinion and Order entered on November 22, 1994, IT IS HEREBY ORDERED: Judgment is entered in favor of Biopure and Credit Francais International, S.A. ("CFI") as against Balfour Holdings, Inc. and Peter Fisher.  By supplementary order under Rule 60(a), the district court noted the pendency of additional, unspecified claims, but reiterated its intention to certify the second Rule 54(b) judgment for immediate appeal "in the interests of justice." As best we can glean from the record, at that time all claims remained pending ___ ______ ________ _______ (with CFI substituted as plaintiff on some) and all parties ___ ___ _______ remained in the case on other claims.  The Appeals The Appeals ___________ Following the denial of the Rule 59(e) motions to amend, Trainor reinstated his appeal from the July 1, 1994 judgment (No. 94-1854). See Fed. R. App. P. 4(a)(4). On January ___ 3, 1995, Fisher and Ideal each filed a notice of appeal. The Fisher notice, a single document titled "Notice of Appeal and 11 Cross-Appeal," purported to notice an appeal from the December 6 judgment and a "cross-appeal" from the July 1 judgment.4 The Ideal notice, identically titled, likewise purported to notice an appeal from the December 6 judgment and a "cross-appeal" from the July 1 judgment, as well as another "cross-appeal" from the December 6 judgment, identified only as taken in response to  _ Fisher's notice of appeal. The Fisher notice was docketed as No. 95-1092; the Ideal notice as 95-1091. Trainor and CFI jointly moved for voluntary dismissal of the Trainor appeal on March 20, 1995, and the motion was granted the same day. Fisher and Ideal moved to vacate the voluntary dismissal.5 I. Standing to Appeal (No. 95-1091) I. Standing to Appeal (No. 95-1091) ________________________________ Notwithstanding the wording of its notice of appeal, Ideal has attempted to join in the Fisher challenge to two district court orders: the denial of the Rule 59(e) motion to amend the first judgment (referred to as a "cross-appeal"), and the denial of the motion to amend the Fisher counterclaim. Ideal was not a party of record before the district court. Its stand-  ____________________ 4The term "cross-appeal" is a misnomer in this context. It normally denotes an appeal by an initial appellee against the initial appellant from an order or decision entered in favor of the initial appellant. See 9 James Wm. Moore, Moore's Federal ___ ________________ Practice 204.11[1] (1995). Fisher and Ideal were not named as ________ appellees in the Trainor appeal, and their so-called "cross- appeals," as a logical matter, were separate appeals from the ________ first judgment in favor of appellee CFI, not the original appel- lant Trainor. Ideal's additional "cross-appeal" against Fisher is simply an enigma. 5We reserved decision on this motion pending oral argument. Fisher and Ideal then filed an opaque motion to consolidate the dismissed and pending appeals, which we denied. 12 ing to appeal thus turns on whether its attempted appellate challenges are excepted from the general rule that only parties to the district court proceedings may appeal a district court judgment. See United States v. Little Joe Trawlers, Inc., 780 ___ _____________ __________________________ F.2d 158, 161 (1st Cir. 1986). By itself, the Ideal challenge to the denial of the Rule 59(e) motion, briefed separately under the rubric "cross-appeal," appears to come within no exception to the general rule.  Nonetheless, the denial of Ideal's motion to amend the Fisher counterclaim by, inter alia, "adding Ideal as a party _____ ____ plaintiff," may have been an appealable order. As the nominal borrower of the funds loaned by CFI, Ideal claims that it, not CFI, was entitled to assert a constructive trust over the equity claims acquired by Trainor when he wrongly diverted the loan proceeds to Biopure.6 Ideal thus asserts an interest at least superficially akin to those cognizable under Fed. R. Civ. P. 24(a)(2).7  An order denying a motion to intervene of right is  ____________________ 6There are no district court findings which would enable confident determinations as to who controlled Ideal at various material times. Moreover, the record suggests that Ideal was a shell, wholly owned and controlled by Trainor, at the time of the CFI loan. During the CFI loan transaction ("in or about 1989"), however, Fisher allegedly gained control of Ideal.  7See supra note 6. Ideal purports to be a bona fide pur- ___ _____ chaser of the CFI loan proceeds, so as to cut off any right CFI might have to "trace" its loan funds into the Biopure deal. Ideal claims that, through Fisher, it innocently acquiesced in the CFI loan arranged by Trainor, then innocently redirected the loan proceeds to Trainor (allegedly for the purchase of a worth- less landfill). Trainor used the money to finance the Biopure deal.  13 immediately appealable, without the need for certification under ___________ Rule 54(b). Flynn v. Hubbard, 782 F.2d 1084, 1086 (1st Cir. _____ _______ 1986); 6 James Wm. Moore et al., Moore's Federal Practice 54.38 ________________________ n.4 (1995). The appeal cannot be kept in reserve; it must be taken within thirty days of the entry of the order, or not at all. See B.H. by Pierce v. Murphy, 984 F.2d 196, 199 (7th ___ _______________ ______ Cir.), cert. denied, 113 S. Ct. 2930 (1993). As Ideal filed no ____________ timely notice of appeal from the denial of its motion to inter- vene, we lack jurisdiction over its appeal. The thirty-day appeal period extended from the date of entry (November 28, 1994) of the November 22, 1994, order denying intervention, see Fed. R. ___ App. P. 4(a)(1),8 and Ideal did not file its notice of appeal _____ until January 3, 1995.9 Appeals from the First Judg- Appeals from the First Judg- ______________________________  ____________________ 8The entry of the Rule 54(b) judgment against Fisher on December 6, 1994, did not enlarge the appeal period, for two reasons. The judgment did not include Ideal's claims and, as an exception to Rule 54(b), the denial of intervention was appeal- able without an "express direction for the entry of judgment" on a separate document. Cf. Willhauck v. Halpin, 953 F.2d 689, 701 ___ _________ ______ (1st Cir. 1991). Since Ideal sought intervention in the still- pending litigation, and not relief from a final judgment, there is no reason to consider further the applicability of the "sepa- rate document" rule in relation to the denial of this motion. Compare infra note 12. _______ _____ 9Ideal did not move for an extension of time to appeal the denial of its motion to intervene/amend the counterclaim, al- though it joined Fisher in a motion to extend the time to file the so-called "cross-appeal" from the first judgment. The latter request was denied for failure to show good cause or excusable neglect.  We simply add that the district court did not abuse its discretion in denying the motion to amend/intervene as untimely. See Conservation Law Found. v. Mosbacher, 966 F.2d 39, 41 (1st ___ _______________________ _________ Cir. 1992). The case had been pending since 1990, the CFI loan transaction had been addressed in pleadings dating back to April, 1991, and CFI had moved to intervene ten months before the attempted counterclaim. The court rightly explained that "so 14 ment: the Fisher "Cross-Ap- ment: the Fisher "Cross-Ap- ______________________________ peal" and the Voluntary Dis- peal" and the Voluntary Dis- ______________________________ missal of the Trainor Appeal missal of the Trainor Appeal ____________________________ Fisher contends that the voluntary dismissal of the Trainor appeal should be vacated, as a collusive attempt to foreclose his so-called "cross-appeal" from the same judgment.10- CFI and Trainor respond that Fisher has no standing to oppose dismissal of the Trainor appeal, nor to appeal from the first judgment in his own right, because he elected initially not to contest CFI's motion against Trainor below.11 Fisher's stand-  ____________________ much blood has passed under the bridge" that it would work a "perversion" of the liberal amendment policy of Rule 15 to permit Ideal to introduce a new claim so late in the proceedings. Other "timeliness" criteria weighed against Ideal as well. First, appellees would have been unfairly prejudiced had intervention been allowed. Second, Ideal can point to no clear probability of success on the merits, since its independence from Trainor during the relevant time period, as well as Ideal's capacity to sue, are open to serious question. And, third, no "exceptional circum- stances" are suggested. See Banco Popular de Puerto Rico v. ___ ______________________________ Greenblatt, 964 F.2d 1227, 1231-34 (1st Cir. 1992) (setting forth __________ factors to be considered in determining timeliness of interven- tion). Thus, the district court properly denied the motion to amend and Ideal lacked standing to appeal.  10As already noted, see supra pp. 12-13, note 9, Ideal lacks ___ _____ standing to appeal either judgment. Fisher argues that he should have been given prior notice and an opportunity to challenge the dismissal. Although we agree that the better practice is to give notice to all "cross-appellants" prior to any voluntary dismiss- al, unless the cross-appellant has joined in an agreement that includes the payment of costs, see Fed. R. App. P. 42(b), in ___ these circumstances neither Fisher nor Ideal was prejudiced by the failure to provide separate notice to Fisher. See supra note ___ _____ 4 and infra pp. 14-18. _____ 11We note, moreover, that Fisher's ambiguous response to the CFI motion in the district court implicates a separate issue. A party may have standing to appeal, yet lose because he has waived or forfeited the arguments sought to be raised on appeal. Cf. ___ Dopp v. HTP Corp., 947 F.2d 506, 512 (1st Cir. 1991) (holding ____ __________ that a defendant who was dismissed from the case for lack of _________ personal jurisdiction had no standing to appeal judgments entered 15 ing to appeal turns on his status before the district court at the time the challenged judgment was entered, and the extent to which he is "aggrieved" by the judgment. See I.C.C. v. Holmes ___ ______ ______ Transp. Inc., 983 F.2d 1122, 1125 n.4 (1st Cir. 1993); Little Joe ____________ __________ Trawlers, Inc., 780 F.2d at 161; 9 Moore's Federal Practice  ______________ _________________________ 203.06. Fisher was a party of record at the time the first judgment was entered. Arguably, at least, he was "aggrieved" by the judgment since it entitled CFI alone to a constructive trust _____ over the Trainor claims against Biopure relief which Fisher had sought for himself in his counterclaim against Trainor. Thus, we conclude that Fisher has standing to appeal the first judgment and, for present purposes, we assume arguendo that the ________ appeal is not time-barred.12  A motion for voluntary dismissal of an appeal should be denied only "in the interest of justice or fairness." American ________  ____________________ after it voluntarily absented itself from the proceedings).  12The parties have assumed that the appeal period ran from the November 22 decision denying his Rule 59(e) motion, hence that the January 3 notice of appeal was late. They disagree as to whether the timeliness of a cross-appeal is jurisdictional, and, if not jurisdictional, as to the effect of the denial of appellants' motion to enlarge the time to file a cross-appeal.  However, the "separate document" rule does apply to orders ____ _____ denying Rule 59(e) motions. The lengthy November 22 district court opinion contained numerous orders, such that, arguably at least, the Fisher appeal period ran from the December 6 entry of judgment against him in a separate document. See Fiore v. ___ _____ Washington County Community Mental Health Ctr., 960 F.2d 229, 235 ______________________________________________ n.9 (1st Cir. 1992) (en banc); see also RR Village Ass'n, Inc. v. ________ ______________________ Denver Sewer Corp., 826 F.2d 1197, 1201 (2d Cir. 1987) (words "so __________________ ordered" at end of a 14-page opinion denying Rule 59(e) motion do not satisfy "separate document" requirement). Since we conclude that Fisher failed to prosecute his "cross-appeal," we need not dwell on these other matters.  16 Auto. Mfrs. Ass'n v. Commissioner, Massachusetts DEP, 31 F.3d 18, _________________ _______________________________ 22 (1st Cir. 1994). We discern no legitimate basis for disallow- ing the motion to withdraw the Trainor appeal.  Withdrawal of the Trainor appeal does not terminate the Fisher appeal from the same judgment, nor in any way impede Fisher's ability to protect his own interests before this court. It became clear at oral argument that Fisher's misapprehension in this regard was driven by an erroneous assumption on the part of counsel that the "cross-appeal" bore the same docket number as the Trainor appeal. But the docket sheets, as well as the appellate rules, see Fed. R. App. P. 12(a) (requiring clerk to ___ docket each notice of appeal when received); see also First ___ ____ Circuit Internal Operating Procedures VI.A.2 (1992) ("in the case of cross-appeals, the appeals are treated as two separate appeals for briefing purposes"), indicate otherwise.13 It appears that this misconception also contributed to Fisher's decision to offer for filing, together with Ideal, a late so-called "cross-appeal" brief challenging the first judgment, and to affix to this late filing the docket number assigned to Trainor's previously dis- missed appeal. Had Fisher consulted the docket sheets and  ____________________ 13The parties did not notify the Clerk that they wished to proceed under Fed. R. App. P. 28(h). See First Circuit Internal ___ Operating Procedure VI.A.2. The docket sheets identify Fisher as the "appellant and cross-claimant" in appeal no. 95-1092 -- the number assigned to his "notice of appeal and cross-appeal." (Ideal is identified the same way in appeal no. 95-1091). The Trainor docket sheet cross-references Fisher's and Ideal's appeal numbers, respectively labeling the Fisher appeal as a "cross- appeal" and the Ideal appeal as a "companion case." The rules do not allow a party simply to assume as his own a docket number previously assigned to an appeal taken by another party.  17 complied with the briefing schedule issued by the Clerk, he could have offered a complete initial brief some three weeks earlier bearing the pending docket number assigned to his singular "notice of appeal and cross-appeal."  We must decide, therefore, whether Fisher may proceed with his appellate challenge to the first judgment on the basis of his untimely and misnumbered "cross-appeal" brief. Although such mistakes are not jurisdictional under Rule 3(a), see 9 ___ Moore's Federal Practice 203.12 (1995), Fisher did not seek _________________________ discretionary relief from his errors and omissions (e.g., by ____ requesting leave to file a late supplement to the brief timely filed in number 95-1092). Instead, he filed two opaque motions claiming that wrongdoing by other parties relating to the volun- tary dismissal of the Trainor appeal had hampered his prosecution of the cross-appeal. Appellees spent time responding to those motions and court time was devoted to considering them. As a further consequence, there was no occasion to issue a revised briefing schedule, and appellees have had no occasion to file briefs in response. At this stage, therefore, it would be unfair to foster further delay and expense by countenancing these practices at the expense of innocent appellees.  Accordingly, we decline to relieve Fisher of these errors and omissions, and we direct that his so-called cross- appeal brief be stricken from the record. Cf. United States v. ___ _____________ Hanks, 24 F.3d 1235, 1238-39 (10th Cir. 1994) (declining to _____ relieve appellant of nonjurisdictional delay in perfecting an 18 appeal where appellant corrected the irregularity but caused additional prejudice and unnecessary consumption of court re- sources by failing to give notice of the correction). As Fisher failed to take proper steps to pursue his challenge to the first judgment, we turn our attention to the final question: the appealability of the second Rule 54(b) judgment entered below.  The Fisher Appeal from the Second Judgment: Rule 54(b) The Fisher Appeal from the Second Judgment: Rule 54(b) _______________________________________________________ Certification Certification _____________ Rule 54(b) permits entry of a final judgment as to fewer than all claims or parties upon an express determination that there is "no just reason for delay" in entering judgment. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 579 (1st Cir. _______________ __________________ 1994). Although no party has challenged these Rule 54(b) certif- ications, we are "duty bound to take the matter up sua sponte," ___ ______ since "it implicates the scope of our appellate jurisdiction." Spiegel v. Trustees of Tufts College, 843 F.2d 38, 43 (1st Cir. _______ _________________________ 1988). The required jurisdictional analysis comprises two steps. First, we inquire whether the trial court action underlying the judgment disposed of all the rights and liabili- ties of at least one party as to at least one claim. See Cur- ___ ____ tiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7 (1980); 10 _________________ _________________ Charles A. Wright et al., Federal Practice and Procedure: Civil ______________________________________ 2d 2656 n.9, 2657 n.17 (2d Ed. 1983 & Supp. 1995) (citing __ cases); 6 Moore's Federal Practice 54.34[2-2] n. 4 (citing _________________________ cases); cf. Maldonado-Denis, 23 F.3d at 580 (the ruling should ___ _______________ dispose "completely either of all claims against a given defen- 19 dant or of some discrete substantive claim or set of claims against the defendants generally"). The first requirement was met here with respect to the summary judgments entered against Fisher and in favor of Biopure and CFI. Although CFI's deriva- tive rights against Biopure remain unresolved, as to Fisher nothing remained but to enter judgment.  Second, we must examine the sufficiency of the district court's assessments of (1) any interrelationship or overlap among the various legal and factual issues involved in the dismissed and the pending claims, and (2) any equities and efficiencies implicated by the requested piecemeal review.  In its critical role as a Rule 54(b) "dis- patcher" . . . the district court is to con- sider the strong judicial policy disfavoring ______ ________ ______ ___________ piecemeal appellate review . . . by carefully _________ _________ ______ comparing the dismissed and the unadjudicated claims for indications of substantial overlap -- to ensure that the appellate court is not confronted in successive appeals with common issues of law or fact to the detriment of judicial efficiency.  Kersey v. Dennison Mfg. Co., 3 F.3d 482, 487 (1st Cir. 1993) ______ __________________ (citations omitted) (emphasis added). When the district court provides a sufficient written statement of the grounds for certification, as it should, "we normally accord its discretion- ary decision `substantial deference' and will dismiss for lack of ` ' appellate jurisdiction only if the court's certification was `clearly unreasonable.'" Id. at 486 (citation omitted); see also ` ' ___ ___ ____ Curtiss-Wright, 446 U.S. at 10 ("The court of appeals must of ______________ course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims . . . But once 20 such juridical concerns have been met, the discretionary judgment , of the district court should be given substantial deference.")  Although it is clear from the Rule 54(b) certification that the district court anticipated that an immediate appeal might avoid a trial, this ground "is rarely, if ever, a self- sufficient basis for a Rule 54(b) certification." Kersey, 3 F.3d ______ at 488; see also Spiegel, 843 F.2d at 43 n.4 (cautioning that "a ___ ____ _______ concise list of reasons will likely be needed" to facilitate appellate understanding of the certification decision). The district court certification contained no evaluation of the interdependence of dismissed and pending claims, no identifica- tion or analysis of the remaining claims, and no reference to "compelling evidence that the equities favor early appellate review." Id. Consequently, we have culled the entire record on __ ______ ______ appeal for any "compelling considerations favoring the entry of an earlier than usual judgment," such as might warrant a piece- meal appellate review notwithstanding the absence of specific findings. Feinstein v. Resolution Trust Corp., 942 F.2d 34, 40 _________ ______________________ (1st Cir. 1991) (quoting Spiegel, 843 F.2d at 43 n.4); see also _______ ___ ____ Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 936 (1st Cir. 1995) ______ ____________________ (nothing is gained by remanding a case for entry of a properly- crafted judgment where in due course the same issues will be returned to the appellate court).  At the time the appeal was taken from the judgment against Fisher, the only appropriate consideration apparently favoring Rule 54(b) certification was the possibility that it (in 21 combination with the earlier judgment against Trainor) might prod the parties to settle their differences, particularly in light of the fact that the district court rulings effectively substituted CFI as the sole plaintiff with respect to the purported joint venturers' claims against Biopure.  Still in the case, however, were all the same claims, with CFI as a derivative plaintiff on some. Moreover, all parties remained in the case in connection with other claims. "Rule 54(b) certification is particularly suspect when the contestants on appeal remain, simultaneously, contestants below." Kersey, 3 F.3d at 487 (citations omitted); cf. Feinstein, 942 ______ ___ _________ F.2d at 40 (upholding a district court certification which lacked specific findings, but where the judgment had disposed of all ___ claims against all six appellees).  ___ Settlements during the pendency of the present appeal did winnow out some claims. Trainor settled with CFI and Bio- pure. Appellees suggest that there will be a further reduction in the number of pending claims should we affirm the district court judgment. CFI and Biopure represent that they have condi- ______ tionally settled CFI's derivative claims between themselves. At ________ oral argument, all parties indicated that they would likely forgo their remaining claims were the court to affirm the judgment against Fisher. These prospects nonetheless do not affect the required threshold jurisdictional analysis: "To entertain an early appeal just because . . . a [particular] ruling . . . might _____ transpire and might expedite a particular [party's] case would _____ 22 defoliate Rule 54(b)'s protective copse." Spiegel, 843 F.2d at _______ 46. As we scan the present landscape, the following claims remain pending before the district court. In Fisher v. Trainor, ______ _______ all Fisher claims against Trainor remain pending.14 In Trainor _______ v. Biopure, the following remain pending: (1) Biopure's third- _______ party claims against Fisher, (2) the Fisher counterclaim against Trainor,15 and (3) CFI's derivative and direct claims against Biopure. Thus, all claims against Fisher remain in the case, and all parties as well. There is a substantial interdependence and overlap between pending and dismissed claims. In Trainor v. Biopure, the _______ _______ pending CFI derivative claims against Biopure are entirely dependent on the validity and value of the constructive trust over the Fisher claims. In addition, there is a problematic factual overlap as between the pending Biopure claims against Fisher (for violations of RICO, Mass. Gen. L. ch. 93A, securities fraud, common law fraud and declaratory judgment) and the con- structive trust, declaratory judgment and unjust enrichment claims resolved favorably to CFI.   ____________________ 14Although we consider each of the consolidated actions separately in order to expedite our analysis, we note as well that there are obvious overlaps among the dismissed and the pending claims, which cut across these consolidated actions. Cf. ______ ___ FDIC v. Caledonia Inv. Corp., 862 F.2d 378, 381 (1st Cir. 1988). ____ ____________________ 15Apparently, no judgment has been entered on this counter- claim, although the district court denied Fisher's motion to expand and amend it, and the logic of the two judgments in favor of CFI may moot it. An earlier motion by Trainor to dismiss the counterclaim also appears to remain pending. 23 Biopure alleges that Fisher, as well as Trainor, defrauded CFI in connection with the CFI loan transaction; that Fisher misrepresented or failed to disclose that the funds he and Trainor invested in Biopure had been fraudulently obtained from CFI; and that their investment in Biopure was but one in a series of fraudulent transactions jointly undertaken by Trainor and Fisher. Similarly, although CFI charged Trainor alone with actual fraud, it alleged that Fisher "knew or should have known" that the funds invested in Biopure had been fraudulently obtained from CFI, without consideration.  The overlapping issues the scope of the fraud on CFI, and Fisher's knowledge, role, and legal responsibility for it, if any "bid fair to form an essential focus of successive appeals." Kersey, 3 F.3d at 487. CFI and Biopure prevailed below ______ by proffering factual concessions solely for purposes of their ______ ___ ________ __ _____ summary judgment motions. Their concessions which have varied _______ ________ _______ somewhat on appeal raise ambiguous inferences and actually conflict in important respects. CFI offers to stipulate that Fisher had no actual knowledge of the tainted source of the funds, and that Trainor's fraud on CFI was independent of, and committed prior to, the formation of the joint venture. Biopure tenders similar factual concessions based on fragments from Fisher's pleadings, but does not assume that Trainor's prior fraud was independent of the joint venture. Both parties offer to stipulate that Trainor may have defrauded Fisher as well.  CFI argues that under Massachusetts partnership law, 24 Mass. Gen. L. ch. 108A, 12, and equitable restitutionary principles, it is entitled to a constructive trust over Fisher's claims without regard to Fisher's state of mind, because Trai- nor's independently-acquired guilty knowledge is to be "imputed" automatically to the Trainor-Fisher joint venture. On the other hand, Biopure apparently assumes that the joint venture must be "liable" for Trainor's fraud, or if not the fraud, then the "fraudulent investment." See Mass. Gen. L. ch. 108A, 13. ___ Their theories are problematic.  The determinative equity-based principles at work here are highly fact-sensitive.16 See Restatement (Second) of Agen- ___ cy 274 cmts. b & c, 282 cmts. h & i (1958); Restatement of Restitution 172-74, 202, 203, 208(3), 210-213, 215 (1937); 1 Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on _______________________ Partnership 4.06 & nn. 13-16, 4.07 & nn. 23, 27-30 (1991 & ___________ Supp. 1994); see also Loring v. Baker, 329 Mass. 63, 65, 106 ___ ____ ______ _____ N.E.2d 434, 436-37 (1952); New England Trust Co. v. Farr, 57 F.2d _____________________ ____  ____________________ 16The district court made no express choice-of-law determi- nation, but assumed, as do the parties, that Massachusetts law governs the partnership issues (the Trainor-Fisher joint venture allegedly was formed in Massachusetts). We are less clear as to what law the court utilized in determining the remedy available to CFI for the fraudulent loan transaction. Appellees rely primarily on federal cases which apply the law of states other than the forum. See Federal Deposit Ins. Corp. v. Braemoor ___ ____________________________ ________ Assocs., 686 F.2d 550 (7th Cir. 1982) (Illinois law), cert. _______ ____ denied, 461 U.S. 927 (1983); Higgins v. Shenango Pottery Co., 256 ______ _______ ____________________ F.2d 504 and 279 F.2d 46 (3d Cir.) (Pennsylvania law), cert. ____ denied, 364 U.S. 899 (1960). As we need not resolve the choice- ______ of-law question, we intimate no opinion. We note only that the cited rulings likewise were highly fact-dependent, and are of little assistance given the ambiguities and conflicts in the hypothesized facts presented in the instant case.  ____________ 25 103, 111 (1st Cir.) (applying Massachusetts partnership law), cert. denied, 287 U.S. 612 (1932).  ____ ______ The crux of the Rule 54(b) certification problem in the present context is that any substantive ruling based on the present record would require that we determine the hypothetical ____________ reach of the governing partnership law and restitutionary princi- ples. The materiality of the conflicting stipulations would have to be addressed and their limitations and ambiguities resolved. Meanwhile, Fisher's knowledge of the fraud and the scope of the Trainor-Fisher joint venture would remain crucial, unresolved considerations underlying the Biopure claims. Subsequent dis- trict court proceedings could very well render superfluous whatever interim appellate resolution might be predicated on this fragile hypothetical foundation, and another panel could be required to revisit the central question of Fisher's knowledge and participation in the alleged scam. Such piecemeal appellate exercises sacrifice judicial efficiency and risk serious, unin- tended res judicata effects. See Kersey, 3 F.3d at 487 (citing ___ ________ ___ ______ cases abjuring such risks).  On the face of the pleadings in Fisher v. Trainor ______ _______ alone, there appears "so substantial a prospect of contextual overlap" between Fisher's dismissed claims (against Biopure) and his unadjudicated claims (against Trainor), as to "counsel[] strongly against Rule 54(b) certification." Id. The crux of the __ Fisher claims against both Trainor and Biopure for unjust enrich- ment (Count Five), and against Biopure for promissory estoppel 26 (Count Eight), is that Fisher contributed substantial time and expertise ("sweat equity") to the venture, resulting in a sub- stantial increase in the value of the Biopure stock and product licensing rights. In addition, the Fisher "breach of contract" claim against Biopure, and the "interference with contract" claim against Trainor, rest on identical factual allegations, viz., the "switch" in contracting parties. See supra p. 6. ___ _____ These overlapping issues were not focused upon in the district court opinion granting summary judgment to Biopure (and a constructive trust to CFI). The court presumably was able to disregard the overlaps largely because Fisher failed to oppose the motions for summary judgment on the ground that he had a right to recover for his "sweat equity" contributions. Thus, the success of the motions for summary judgment depended upon an assumption that Fisher's only investment in Biopure consisted of ____ funds fraudulently obtained from CFI. Notwithstanding the fact that Fisher's "sweat equity" was a focus of his complaint and that there was competent testimonial evidence of his efforts,17 he did not counter with the claim that he (or the joint venture) had contributed untainted value which enhanced the worth of the __ Biopure stock and licensing rights. Instead, he argued simply  ____________________ 17Of course, it was for Fisher to generate a material issue of fact that might enable him, and not merely CFI, to recover from Biopure for unjust enrichment and promissory estoppel. Fisher adverted to his "sweat equity" only as "consideration" for a loan which Trainor allegedly promised Fisher. See accompanying ___ text. Passing mention of facts from which a theory might later be carved does not place an undeveloped argument in issue. United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992).  _____________ _____ 27 that he was a bona fide purchaser of the loan funds fraudulently obtained from CFI by Trainor, on the theory that Trainor had made a false promise to lend the CFI monies to Fisher.  By offering his "sweat equity" theory of recovery for the first time at oral argument on appeal, Fisher essentially urged that we relieve him of his district court waiver.18 But the Rule 54(b) safeguards against inefficient piecemeal review would be severely undermined were we to attempt to speculate at this juncture as to the labrynthine consequences of Fisher's failure to assert this theory before the district court in the first instance. Moreover, an argument "surfacing for the first time on appeal" may be excepted from the raise-or-waive rule only if it is "so compelling as virtually to insure appellant's success, and a gross miscarriage of justice would result from [the] failure to address it." American Auto. Mfrs. Ass'n, 31 ___________________________ F.3d at 26; see also Johnston v. Holiday Inns, Inc., 595 F.2d ___ ____ ________ __________________ 890, 893 (1st Cir. 1979) (waiver rule is relaxed only in "horren- dous cases" where a gross miscarriage would occur).  A fortiori, we think it clear that the waiver rule _ ________ should be rigorously applied to interlocutory appeals certified pursuant to Rule 54(b). The strength of the forfeited Fisher  ____________________ 18Fisher made reference to this theory in an "introductory" comment to his reply brief as well. Arguments omitted from an opening brief on appeal ordinarily are deemed waived. See ___ Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st __________________________ ______________ Cir. 1983) ("An appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed, and appellant generally may not preserve a claim merely by referring to it in a reply brief or at oral argument."). 28 theory can be assessed only by focusing on the core factual allegations underlying both the dismissed and the pending claims, as well as the closely intertwined legal issues governing any remedy. See and compare, e.g., Meehan v. Shaughnessy, 404 Mass. _____________________ ______ ___________ 419, 445-46, 535 N.E.2d 1255, 1270 (1989) (award of constructive trust based on usurped partnership opportunities may entail a proportionate assessment of profits generated by each partner's efforts); Provencher v. Berman, 699 F.2d 568, 572 (1st Cir. 1983) __________ ______ (allowing non-partner wrongdoers to retain proportionate share of property held in constructive trust for another where wrongdoers had contributed value to the property in the form of untainted __ personal labor).  The "gross miscarriage of justice" test likewise requires consideration of interrelated factual and legal theo- ries. Typically, a miscarriage of justice may be shown where a litigant would suffer grave personal harm, such as a loss of liberty or domicile, see American Auto. Mfrs. Ass'n, 31 F.3d at ___ __________________________ 26 (citations), or where the issue involves sensitive matters of federalism or the public interest. See Capitol Indem. Corp. v. ___ _____________________ Keller, 717 F.2d 324, 328-29 (7th Cir. 1983). A "gross miscar- ______ riage of justice" also may be found, however, if the forfeited claim would "seriously effect[] [sic] the fairness, integrity or public reputation of a proceeding." Desjardins v. Van Buren __________ __________ Community Hosp., 969 F.2d 1280, 1282 (1st Cir. 1992).19 _______________  ____________________ 19New arguments may be entertained on appeal in "exceptional circumstances" where no prejudice would result either to other parties or to the administration of justice. United States v. _____________ 29 Any showing that a "miscarriage of justice" might obtain in the present context ultimately would depend on whether the constructive trust awarded CFI constituted an unwarranted "windfall," grossly disproportionate to any losses. However, the injustice in any such "windfall" is inextricably bound to the remedial principles utilized to resolve the dismissed claims and ___ the pending claims. See, e.g., Provencher, 699 F.2d at 570-72 ___ ____ __________ (applying restitutionary principles where more than one claimant contributed to value of property claimed under constructive trust); Janigan v. Taylor, 344 F.2d 781, 787 (1st Cir.) (explain- _______ ______ ing restitutionary principles applicable to "constructive trust" remedy), cert. denied, 382 U.S. 879 (1965); see generally 1 ____ ______ ___ _________ George E. Palmer, Law of Restitution 2.14 (1978 & Supp. 1995); ___________________ Austin W. Scott & William F. Fratcher, Scott on Trusts 508 (4th _______________ ed. 1989 & Supp. 1994); Dale A. Oesterle, Deficiencies of the ____________________ Restitutionary Right to Trace Misappropriated Property in Equity _________________________________________________________________ and in UCC 9-306, 68 Cornell L. Rev. 172 (1983). Moreover, ____________________ crucial, unresolved facts including the value of the claims over which CFI has been awarded a constructive trust,20 and the  ____________________ Rivera, 55 F.3d 703, 708 (1st Cir. 1995); cf. City of Newport v. ______ ___ ________________ Fact Concerts, 453 U.S. 247, 255 (1981) (holding that a forfeited _____________ claim may be considered on appeal where the trial court addressed the merits of a belated objection, and the appellate court does not disagree with the substance of the trial court ruling). 20Fisher asserted at oral argument that these claims were worth at least $179 million, an estimate apparently based on the Biopure/Upjohn contract. Biopure stated that no proof was presented below as to the value of the claims. Fisher's supple- mentary appendix includes an unindexed copy of the contract, but there is no indication that it was before the district court at summary judgment, and we have seen no record findings as to 30 value of Fisher's belatedly asserted untainted contributions  __ remain central to the disputed claims still pending before the district court. Thus, the insufficiently developed trial court record precludes any reliable determination as to whether a miscarriage of justice would obtain were the waiver rule to be applied to the Fisher v. Trainor action. ______ _______  ____________________ value.   31 III III CONCLUSION CONCLUSION __________ Accordingly,  (1) As the second Rule 54(b) certification was improv- idently granted, we lack appellate jurisdiction of the Fisher appeal in No. 95-1092, which is hereby dismissed without preju- _________ dice;  (2) the Ideal appeal in No. 95-1091 is dismissed for _________ lack of appellate jurisdiction and lack of standing;  (3) the motion to vacate the voluntary dismissal of the Trainor appeal in No. 94-1854 is denied, and the so-called ______ "cross-appeal brief" filed by Fisher and Ideal in No. 94-1854 is  hereby stricken;  ________ (4) the case is remanded to the district court for further proceedings consistent with this opinion; and  (5) double costs are awarded to CFI and Biopure. See ____________ ___ Fed. R. App. P. 38. SO ORDERED. SO ORDERED. __ _______ 32