[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]
United States Court of Appeals
For the First Circuit

Nos. 97-2072
98-1050

ROLAND CHAMBERS,

Plaintiff, Appellant, Cross-Appellee,

v.

CITY OF CALAIS,

Defendant, Appellee, Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Eugene W. Beaulieu, U.S. Magistrate Judge]

Before

Selya, Circuit Judge,
Bownes, Senior Circuit Judge,
and Lynch, Circuit Judge.

Wayne P. Doane, with whom Cuddy & Lanham and Joyce
Mykleby were on brief for appellant, cross-appellee.
Daniel L. LaCasse for appellee, cross-appellant.

August 18, 1998

Per Curiam. Roland Chambers sued his employer, the City
of Calais, Maine, following his demotion and the eventual
termination of his employment. A jury found for Chambers on claims
of age discrimination under the federal Age Discrimination in
Employment Act (ADEA), 29 U.S.C.A. 621-634 (West Supp. 1998) and
the Maine Human Rights Act (MHRA), Me. Rev. Stat. Ann. tit. 5, 
4551-4633 (West 1997), but against Chambers on his claims of
disability discrimination under the Americans with Disabilities Act
(ADA), 42 U.S.C.A. 12111-12117 (West Supp. 1998).
Chambers appeals the magistrate judge's determination on
equitable remedies, challenging the judge's decision not to award
front pay, to offset an award of back pay with Chambers' income
from collateral sources, and not to award certain incidental
expenses. The City appeals from the judge's denial of its renewed
motion for judgment as a matter of law, arguing that the evidence 
was insufficient for the jury to have found liability on Chambers'
age discrimination claim. We affirm.
I.
We recite the facts as the jury could have found them, in
the light most favorable to its verdict. See Wildman v. Lerner
Stores Corp., 771 F.2d 605, 607 (1st Cir. 1985).
Roland Chambers began working for the City in 1980, when
he was thirty-four years old. Chambers worked most of his career
at the City's highway department. He was made foreman of the
highway crew in 1990. Because of lower back pain, Chambers
consulted a physician in 1993, who advised him against certain
physical activities. Chambers gave a copy of this report to his
employer.
In May 1994, the City hired a new city manager, Mark
Ryckman, who was twenty-four years old at the time, fresh from a
graduate program. Ryckman undertook a restructuring of the
department, a restructuring that eliminated Chambers' position of
highway crew foreman. In October 1994, Ryckman called Chambers
into a meeting and informed him that his position was being
eliminated. Chambers was offered his earlier position of
driver/operator, which was at a significantly lower wage, and was
not offered any other position with the City. Chambers chose to
accept the demotion rather than resign. Chambers was forty-eight
years of age at the time, within the ADEA-protected age group.
At the meeting, Chambers also learned that Mark Magoon,
age thirty-six, would be named the new public works director,
replacing Maurice Bernard, age fifty-nine. Bernard was demoted and
after a few years left the employ of the City. Magoon held the job
of cemetery foreman, a supervisory position which was comparable in
pay and responsibilities to Chambers' previous position as foreman
of the highway crew. Chambers expressed interest in the cemetery
foreman's position, but he was told that it was not available.
Chambers also learned at the meeting that Magoon had
named Robert Seelye, age thirty-five, to be the new cemetery
foreman. Magoon testified, "I felt [Seelye] could work with the
younger kids and such as myself [sic] when I worked with the
younger crew at the cemetery. I just felt he could work with [the
younger crew] better."
Chambers complained at the meeting that the cemetery
foreman position had not been posted in accordance with the City's
usual policy, and also expressed opposition to Ryckman's decision
to name Magoon as Public Works Director, noting Magoon's lack of
experience. At trial, City Manager Ryckman admitted that the
cemetery foreman position had not been posted as open and that this
was in violation of the City's personnel guidelines. Chambers
filed an internal grievance. Ryckman told Chambers that Ryckman
did not feel he had to justify the restructuring to him. Following
this incident, Chambers was assigned menial tasks such as sweeping
sidewalks and shoveling snow out of sewer basins.
In November 1994, approximately one month after his
demotion, Chambers filed a complaint with the Maine Human Rights
Commission, alleging that the demotion was because of his age. 
Chambers noted in his complaint that the only two City employees
who had been demoted during the restructuring, himself and Barnard,
were the oldest workers in the Department, and that younger
workers, Magoon and Seelye, had been promoted as part of the
restructuring. Both Ryckman and Magoon knew of Chambers' age
discrimination complaint.
In April 1995, Magoon ordered Chambers to do "cold-
patching," a method of repairing pot holes that requires shoveling
cold asphalt by hand. Chambers said that he was physically unable
to perform this task because of his back trouble, and presented a
doctor's note to that effect. Magoon suspended Chambers without
pay for two weeks. Chambers filed an internal grievance, alleging
that his suspension was in retaliation for his age discrimination
complaint.
In August 1995, Chambers was again assigned hard physical
labor for a three-week period, cleaning leaves and debris from
sewer and storm basins. Chambers was physically unable to perform
this work without severe pain. Chambers nevertheless attempted to
perform the assigned tasks, and, as a result, rendered himself
unable to come to work near the end of the period. When he
returned, Chambers confronted Magoon and demanded to be put on
"light duty" assignments. Chambers was again suspended without pay
for two weeks. After briefly returning to work, Chambers was
fired.
Chambers filed this suit against his employer, alleging
that the City had violated his due process rights and had
discriminated against him on account of age and disability. The
district court dismissed the due process claim; the claims for age
and disability discrimination went to the jury. The jury found
that the City was liable for age discrimination, but not for
disability discrimination, and awarded compensatory damages of
$180,000.
II.
We review de novo the denial of the City's renewed motion
for judgment as a matter of law, "which means that we use the same
stringent decisional standards that control the district court." 
Hendricks & Assocs., Inc. v. Daewoo Corp., 923 F.2d 209, 214 (1st
Cir. 1991). Thus, we will reverse the jury verdict "only if the
evidence, viewed from the perspective most favorable to the
nonmovant, is so one-sided that the movant is plainly entitled to
judgment, for reasonable minds could not differ as to the outcome." 
Gibson v. City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994)
(citation omitted).
Although the evidence is close, a reasonable jury could
have found that the City's actions violated Chambers' rights under
the ADEA and its state counterpart, the MHRA. Chambers bore the
burden of establishing that age was a motivating factor in the
City's actions; the City is liable if that impermissible factor was
the decisive one, in the sense that it would not have taken the
adverse action but for its discriminatory motive. See Loeb v.
Textron, Inc., 600 F.2d 1003, 1019 (1st Cir. 1979) (ADEA); Wells v.
Franklin Broad. Corp., 403 A.2d 771, 773 (Me. 1979) (Maine law).
Magoon's comments were evidence that age was a
"motivating factor" in the City's decision to demote him. In light
of all the evidence, the comments also were evidence that, if
Chambers had been younger, he would have received a supervisory
position following the restructuring, such as Magoon and Seelye had
received. Of course, "[w]ords of praise for youth . . . do not, by
themselves, indicate a bias against more mature workers," Mesnickv. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991), and "stray
comments are insufficient to meet the plaintiff's burden in an ADEA
case," Thomas v. Sears, Roebuck & Co., 144 F.3d 31, 34 (1st Cir.
1998). However, there was additional circumstantial evidence in
this case of bias, including failure to follow established
personnel policies of posting open positions, and the fact that the
City demoted the two oldest employees in the Department while
promoting two much younger ones. See Brennan v. GTE Gov't Sys.
Corp., 1998 WL 387405, at *6 (1st Cir. July 16, 1998). Moreover,
the jury could reasonably have determined that the City's actions
following Chambers' filing a complaint with the Maine Human Rights
Commission, including the hard labor assignments in the face of a
doctor's note that Chambers should not do the work assigned, the
resulting suspensions, and ultimately Chambers' termination, were
at least in part in retaliation for Chambers' complaint.
The jury was not asked to answer the questions of age
discrimination and of retaliation separately, so neither do we. 
After a thorough review of the whole record, we find that there was
sufficient evidence for the jury to have held the City liable for
violating the ADEA and the MHRA.
III.
Before turning to Chambers' appeal, we observe that the
jury's award of compensatory damages of $180,000 was based on an
error, but an error to which the City did not object at trial and
which is not a basis for its appeal. While the ADA authorizes
emotional distress damages, the ADEA does not similarly authorize
such damages. See Vazquez v. Eastern Air Lines, Inc., 579 F.2d
107, 112 (1st Cir. 1978); see also Commissioner v. Schleier, 515
U.S. 323, 326 & n.2 (1995) (noting unanimous agreement in the
courts of appeals that "ADEA does not permit a separate recovery of
compensatory damages for pain and suffering or emotional
distress"). Instead, the ADEA permits only equitable relief in the
form of lost wages, including back pay, front pay and certain other
monetary loss, relief that is a matter for the judge to calculate. 
The error resulted from a verdict form, to which the City agreed,
that permitted the jury to award compensatory damages if it found
liability on either claim. The verdict form should have indicated
that the jury was to award compensatory damages only if it found
liability on the ADA claim.
The defendant, however, did not at any time object to the
verdict form. Nor did the defendant argue to the district court
that the ADEA does not authorize such damages in its motion for a
new trial or a remittur of damages. Instead, it argued only that
the damages were excessive. Issues that are not raised in the
district court are waived on appeal; we will reach the issue in a
civil case only if it is "so compelling as virtually to insure
appellant's success, and a gross miscarriage of justice would
result from [the] failure to address it." Credit Francais Int'l,
SA v. Bio-Vita, Ltd., 78 F.3d 698, 709 (1st Cir. 1996) (citations
and internal quotation marks omitted)(emphasis supplied).
"In this context, 'miscarriage of justice' means more
than the individualized harm that occurs whenever the failure
seasonably to raise a claim or defense alters the outcome of a
case. Rather, courts ordinarily will relax the raise-or-waive
principle on this basis only if a failure to do so threatens the
frustration of some broadly important right." National Assoc. of
Social Workers v. Harwood, 69 F.3d 622, 628 n.5 (1st Cir. 1995)
(citation omitted). This high standard is rarely met when a party
attempts to raise an issue for the first time on appeal. 
See Correa v. Hospital San Francisco, 69 F.3d 1184, 1196 (1st Cir.
1995) (noting that "the exceptions are few and far between"). We
are even more reluctant to save the City from its waiver when it
has not raised the issue on appeal. See Whyte v. Connecticut Mut.
Life Ins. Co., 818 F.2d 1005, 1011 n.20 (1st Cir. 1987) ("It cannot
be disputed that the standard that must be met for this court to
raise an issue on appeal is at least as high as the standard for a
party seeking to raise an issue for the first time on appeal.") 
Permitting the jury award to stand will not result in a "gross
miscarriage of justice" under the circumstances.
Chambers sought total equitable relief in the amount of
$354,391.62. Chambers' request included (1) back pay of
$35,022.19, which he requested should be doubled as liquidated
damages under the ADEA, (2) front pay of $213,154.05, (3) travel
costs of $21,735.00, (4) lost sick time of $2,661.60, (5) lost
vacation time of $1,744.40 and (6) civil penal damages under the
MHRA of $10,000, the maximum under Maine law.
The magistrate judge denied Chambers' request for front
pay, and also denied Chambers' requests for travel costs, lost sick
time and lost vacation time. The judge awarded only $6,022.00 as
back pay, after deducting from the award the wages that Chambers
was able to earn at his new employment, and then doubled this
amount, as requested, as liquidated damages. The judge also
awarded civil penal damages under Maine law, but awarded only
$1,000, not the maximum $10,000 that Chambers had requested,
arriving at a total equitable remedy of $13,044.00
We review the district court's calculation of equitable
relief for abuse of discretion, and find none. See Lussier v.
Runyon, 50 F.3d 1103, 1111 (1st Cir. 1995). Front pay and the
other incidental expenses which the district court denied are
discretionary, see Wildman, 771 F.2d at 616, and the district
court's decision to deduct Chambers' wages from his new position
from its back pay award, although not mandated by the ADEA, is
permitted as part of the district court's endeavor to fashion an
award that places the injured party "as near as may be, in the
situation he would have occupied if the wrong had not been
committed." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19
(1975) (internal quotation marks and citation omitted). The
magistrate judge noted, in denying these items, that the jury's
$180,000 award, plus the $13,044 in equitable relief, had made the
plaintiff whole. It was appropriate for the magistrate judge to
consider the jury award in deciding whether to award certain items
of discretionary equitable relief. Considering the relief as a
whole, it was not error for the magistrate judge to have awarded
only $13,044 in equitable relief.
The judgment of the district court is affirmed. Each
party shall bear its own costs.